MILLIKEN v. McCAULEY, Warden. *

No. L-1494.

District Court, E. D. Washington, S. D.

July 8, 1937.

*Order affirmed —— F.(2d) ——.

in the superior court of the State of Washington for King county of the crime of grand larceny, and on May 21, 1932, was duly sentenced under the then existing indeterminate sentence law of the State of Washington to confinement in the state penitentiary for a term of not less than five years nor more than fifteen years. His minimum sentence has now expired. On January 7, 1936, in pursuance of chapter 114, Laws of Washington 1935 (page 308), the board of prison terms and paroles created by that act made an order denying petitioner a parole, and on May 3, 1937, continued his term for three years, which will expire on May 21, 1940. Contending that the act of 1935 is ex post facto as applied to him and further that the board of prison terms and paroles has no power to sit as a board of parole in his case and the prior parole board having been abolished by the act of 1935, the petitioner prays for a writ of habeas corpus. The case is now under submission on the return of the respondent to an order to show cause why the writ should not be granted.

Section 2281, Rem.Rev.Stat., provides: "Whenever any person shall be convicted of any felony for which no fixed period of confinement is imposed by law, the court shall, in addition to any fine or forfeiture which he may impose, direct that such person be confined in the state penitentiary, or in the Washington state reformatory, as the case may be, for a term not less than the minimum nor greater than the maximum term of imprisonment prescribed by law for the offense of which such person shall be convicted; and where no minimum term of imprisonment is prescribed by law, the court shall fix the same in his discretion at not less than six months nor more than five years; and where no maximum term of imprisonment is prescribed by law, the court shall fix such maximum term of imprisonment."

Section 2605, Rem.Rev.Stat., in existence at the time of the commission of the crime by petitioner, fixes the punishment for grand larceny at "imprisonment in the state penitentiary for not more than fifteen years." It will be seen that petitioner's sentence of not less than five years and not more than fifteen years was in strict compliance with the laws in force at the time the crime of which he was convicted was committed. Section 9 of chapter 114, Laws 1935 (page 319), expressly repealed section 2281, supra. Section 2282, Rem.Rev.Stat.,

E. D. Phelan, of Seattle, Wash., and John C. Hurspool, of Walla Walla, Wash., for petitioner.

G. W. Hamilton, Atty. Gen., and W. A. Toner, Asst. Atty. Gen., for respondent.

WEBSTER, District Judge.

The facts in this case are not in dispute. On May 6, 1932, petitioner was convicted

provides: "The state board of control, acting in conjunction with the warden of the state penitentiary, * * * *may* at any time after the expiration of the minimum term of imprisonment for which such prisoner was committed thereto, direct that any prisoner confined in such institution shall be released on parole upon such terms and conditions as in their judgment they may prescribe in each case."

The state board of control referred to in the next preceding statute was abolished by the Washington State Legislature in 1921. Laws 1921, p. 68, § 135; Rem.Rev. Stat. § 10893. By the same act it was provided: "The governor shall, from time to time, appoint parole boards, of three members, who shall, respectively, exercise all the powers and perform all the duties relating to the parole of prisoners from the state penitentiary * * * now vested in, and required to be performed by, the state board of control." Laws 1921, p. 29, § 45; section 10803, Rem.Rev.Stat. Hence it is seen that the old parole board for the state penitentiary had the power to exercise discretion in granting paroles after a prisoner had served his minimum sentence and such paroles were not automatic and absolute as a matter of law merely upon the serving of such minimum sentence. The serving of the minimum sentence served to make the prisoner eligible for parole in the discretion of the board and it performed no other or different office. Section 10803, Rem.Rev.Stat., was repealed by the act of 1935, section 9, c. 114, Laws 1935 (page 319). This same statute which abolished the old parole board created a new board to be known as the board of prison terms and paroles and defined their powers and duties. Section 4 of chapter 114, Laws 1935 (page 313), in part reads: "The board of prison, terms and paroles *may* permit a convicted person to leave the buildings and enclosures of the penitentiary * * * on parole, after such convicted person has served the period of confinement fixed for him or her by the board of prison, terms and paroles, less time credits for good behavior." It is at once observed that under this statute paroles from the penitentiary rest in the discretion of the board of prison terms and paroles and are not automatic as a matter of law upon serving the minimum period of confinement fixed by that board. But, argue counsel for petitioner, this section confers upon the board of prison terms and

paroles the power of parole only in cases where the "convicted person has served the period of confinement *fixed for him or her by the board of prison terms and paroles*" and does not confer upon that board any power of parole in the case of prisoners sentenced under the earlier indeterminate sentence law and that in consequence such a prisoner is left incarcerated under an indeterminate sentence with no board, functionary or official clothed with power to consider or grant a parole. If the foregoing language quoted from section 4 contained all the provisions of the act dealing with the matter of granting paroles, the position of counsel for petitioner would be greatly strengthened and the question would be a serious one not easy of solution. But later in section 4 this pertinent language is found: "The provisions of this act so far as applicable thereto are to apply to all convicted persons now serving time in the penitentiary * * * to the end that at all times the same provisions relating to sentences, imprisonments and *paroles* of prisoners shall apply to all the inmates thereof."

The court must not place a narrow, literal, and technical construction upon a part only of the statute and ignore other revelant parts. In the process of construction the statute must be taken by its four corners and the intent of the lawmakers extracted from a consideration of all the provisions of the act. It is the office of a good interpreter of a statute to make construction of all parts together and not of one part only by itself. The Golden Rule of statutory interpretation is that the intention of the Legislature fairly deducible from the words employed is to be the guide. I should hesitate to convict the Legislature of Washington of enacting a statute which would leave the state penitentiary filled with prisoners serving indeterminate sentences with no power lodged anywhere to determine how long they should serve between the minimum and the maximum sentences or to release them on parole. I am of the opinion that the first quoted portion of section 4 was intended to confer upon the new board the power of parole in cases coming under the new act in which the minimum sentence in effect is fixed by the board—a class of cases not existing under the prior indeterminate sentence law—and that the later quoted portion of the section was intended to confer upon the board the power of

granting paroles to all convicted persons who were serving time in the penitentiary when the act of 1935 went into effect. In the case of this latter class of prisoners they are eligible to parole upon the expiration of the minimum sentences imposed by the courts, whilst in the case of prisoners sentenced under the act of 1935 where no minimum sentence is imposed by the court they become eligible to parole upon serving the period of confinement fixed by the board itself. Let it be borne in mind that under the new act of 1935 the board of prison terms and paroles performs a dual service, one in fixing the period of confinement which the prisoner must undergo before he is eligible to parole, and then to sit as a board of parole and in the exercise of its discretion to determine whether in a particular case a parole shall be granted. To be sure the board of prison terms and paroles has no power to tamper with the lawful sentences of prisoners committed to the penitentiary under the prior indeterminate sentence law. That this board may not increase the minimum sentence of a prisoner sentenced under that law is conceded by the attorney general and his assistant. If the board should attempt to do this it would be to deprive the prisoner of a substantial right—his right to consideration for parole. In re Lee, 177 Cal. 690, 171 P. 958. Since under the earlier statute the granting of a parole to a prisoner confined in the state penitentiary rested in the discretion of the parole board and under the new law the right of parole is likewise in the discretion of the board of prison terms and paroles, it cannot be said as a matter of law that the act of 1935 is ex post facto in that it deprives the prisoner of his right to consideration for parole. If I am correct in my interpretation of the statute, he continues to be eligible to parole after serving his minimum sentence imposed by the court and of this he may not be deprived by the board but whether a parole shall be granted rests in the discretion of the board. All that the new statute does in this regard is to provide a different body of individuals clothed with the same powers and duties that were possessed by their immediate predecessors, the old parole board. In this connection it is insisted by counsel for petitioner that under the old law it was the policy of the parole board to grant paroles in approximately 90 per cent. of the cases where the prisoners had served the minimum sentences imposed by the courts

and that the new board has adopted a different and less generous course. Clearly this presents no question of an ex post facto law, the sole ground upon which the jurisdiction of this court is invoked in this case. Exactly the same thing might have happened if a change in the personnel of the old board had come about and the act of 1935 had never been passed at all. The standard of determination in considering whether a given statute is ex post facto arises out of a comparison of the laws themselves and the rights which they confer or the obligations which they impose, not the manner in which precisely the same powers are exercised by different individuals. The order of the board of prison terms and paroles made on January 7, 1936, merely denied petitioner's application for a parole. The order of the board on May 3, 1937, continued petitioner's application for a period of three years. The effect of this latter order is merely to deny the petitioner's application for parole and to indicate that in the opinion of the board he should not be paroled for the next ensuing period of three years. It can be set aside any time by the board and the petitioner's application for parole be recognized. It would not constitute a barrier in the path of either the present board or its successors in granting a parole to petitioner if in the exercise of their judgment he is deemed worthy of that consideration. The petitioner continues to possess his eligibility for consideration for parole by having served his minimum sentence, and the board continues to possess the power to consider his application upon its merits. The only legal effect of the order is to deny petitioner's application for parole and it performs no other legal function.

It is but human and natural for the inmates of the penitentiary, who have witnessed the functioning of the old board in granting a vast percentage of all applications for parole after the minimum sentences have been served and to now find that a new board adopts a different view which is not so favorable to the inmates, that they should conclude that they are suffering because of the provisions of a new law which in their judgment imposes injustice upon them, but upon an examination of the two statutes it seems clear to me that this condition arises not at all out of any provision of the new statute but comes about because of a different attitude on the

part of a new body of individuals exercising the same powers as those possessed by their predecessors. In passing it seems worthy of suggestion that even though it should be assumed that the present board of prison terms and paroles has no power to sit as a parole board to consider cases where prisoners have been sentenced under the earlier indeterminate sentence law, nevertheless their confinement would not be in violation of the Federal Constitution nor of any law or treaty of the United States, the only ground upon which this court could base jurisdiction. Section 453, title 28, U.S.C. (28 U.S.C.A. § 453).

Writ denied.