[No. 34990. Department One. October 1, 1959.]

*In the Matter of the Application of* Pierce N. Russell *for a Writ of Habeas Corpus.*[1]

*J. Peter P. Healy,* for appellant.

*John G. McCutcheon* and *Keith D. McGoffin,* for respondent.

Donworth, J.—Pierce N. Russell (herein referred to as appellant) petitioned the superior court for Pierce county for a writ of *habeas corpus* to obtain custody of his minor daughter, Jean Russell, who was, and still is, a ward of the juvenile court. After a hearing, the superior court denied him the relief sought, dismissed the writ theretofore issued, and remanded the child to the jurisdiction of the juvenile court. This appeal followed.

The return filed by the chief probation officer of the juvenile court stated the history of the proceedings had in that court, and attached thereto were copies of the pertinent petitions and orders entered in the matter of Jean Russell, a dependent child.

[1]Reported in 344 P. (2d) 507.

On March 3, 1955, Jean's great aunt filed a petition in the juvenile court alleging that Jean (who was born July 5, 1949) was within Pierce county, and that her mother was deceased and her father (appellant) was an inmate of the Washington state penitentiary. The prayer of the petition was that Jean be made a temporary ward of the juvenile court as a dependent child and placed with the county welfare department for foster-home care.

On the same day, without any notice to appellant, the court entered an order granting the prayer of the petition.

On August 19, 1957, appellant petitioned the juvenile court for a modification of its order of March 3, 1955. In this four-page petition, appellant alleged that he had pleaded guilty, on advice of counsel, to a morals charge (not involving Jean) of which he was not guilty; that, after serving one year and nine months of his sentence, he had been paroled and had come back to Tacoma, where he has since been regularly employed as an electrical welder earning $2.50 or more per hour. He further alleged that his home and automobile were fully paid for, and that he had been regularly paying $45.55 per month for Jean's support. The last paragraph of the petition is as follows:

"That Jean has never been a delinquent child; that as the undersigned believes and alleges she has never been a dependent child; but there was a time between the first of 1955 and the first of November, 1956, when the undersigned was unable to be with her, and during that time not known to the undersigned, the Pierce County Juvenile Court is said to have assumed to declare her a dependent child temporarily, and the undersigned avers that if she was ever a dependent child legally, actually or defacto, that the period of dependency has long since passed, and that the undersigned wants and desires to petition for the termination of any order of dependency, and for his daughter, Jean, to be restored to his unqualified possession and custody, and upon the basis of the facts herein alleged, if and when proved, the undersigned is advised and believes and alleges that he is entitled to such unqualified possession of his daughter, Jean.

"WHEREFORE, the undersigned prays that if necessary a

hearing be held and he be given an opportunity to prove all of the allegations herein made, and that upon the conclusion of such hearing the purported order of dependency be modified and terminated;

"That due to insufficient knowledge of the proceedings leading up to the purported order of dependence, he therefore denies that it was legally made or adjudicated, and if so that he has been wrongfully and unlawfully deprived of the custody of his daughter, Jean; and

"For such other and further relief as may be fit and proper and lawful in the premises."

In the prayer of the petition, appellant asserted that he had been unlawfully deprived of the custody of his daughter because of lack of notice of the original proceedings.

On September 27, 1957, a hearing was held on this petition, at which appellant and his counsel were present and were heard. The court continued the matter until further order of the court because the court found that "additional time is needed to determine what is best for the welfare of the said child."

On July 28, 1958, appellant filed in the juvenile court a supplemental petition which was set for hearing on August 5, 1958. According to appellant's allegation in his petition for a writ of *habeas corpus,* this supplemental petition showed

". . . the lack of jurisdiction of the Juvenile Court to assume custody of said child, and lack of jurisdiction to declare said child a delinquent [dependent] child and depriving your petitioner of her custody."

This court has not been furnished with any order or other record of the juvenile court showing what, if anything, was done on August 5, 1958, with respect to appellant's supplemental petition. We assume that no final disposition was made thereof because the petition for a writ of *habeas corpus* (the proceeding now before us) was filed August 13, 1958.

Appellant's assignments of error present only one question of law, to wit, is Jean Russell being held as a ward of the juvenile court pursuant to a valid court order; if so,

the dismissal of the writ of *habeas corpus* by the superior court was proper.

Our recent decisions relating to juvenile court proceedings of the character here sought to be challenged are *In re Messmer*, 52 Wn. (2d) 510, 326 P. (2d) 1004 (1958); *In re Ross*, 45 Wn. (2d) 654, 277 P. (2d) 335 (1954); *In re Warren*, 40 Wn. (2d) 342, 243 P. (2d) 632 (1952), and *In re Miller*, 40 Wn. (2d) 319, 242 P. (2d) 1016 (1952).

We need not decide whether the order of March 3, 1955, was invalid when entered because no notice of the hearing to be held that day by the juvenile court was given to appellant. The reason for this view is that, on August 19, 1957, appellant invoked the jurisdiction of the juvenile court by petitioning it to modify its order of March 3, 1955. On September 27, 1957, he was granted a hearing, at which appellant and his counsel appeared and were heard. The matter was then continued (as above noted) until further order of the court.

Again, on July 28, 1958, appellant invoked the jurisdiction of the juvenile court in this matter by filing a supplemental petition, which was set for hearing on August 5, 1958. What, if anything, happened on that date, we are not advised.

Eight days later appellant instituted the present *habeas corpus* proceeding. Appellant has never sought to have this court review any of the proceedings had in the juvenile court relating to his daughter, nor has he sought any mandate in this court to compel the juvenile court to hear and make a final disposition of his two petitions.

Having twice invoked the jurisdiction of the juvenile court, appellant may not now challenge its jurisdiction in the premises by collaterally attacking its order in this *habeas corpus* proceeding. A writ of *habeas corpus* cannot be used as a substitute for a writ of certiorari, mandamus, or prohibition.

The order of the superior court dismissing the writ of *habeas corpus* and remanding Jean Russell to the jurisdic-

tion of the Pierce county juvenile court is in all respects affirmed.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

---

December 14, 1959. Petition for rehearing denied.